UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

DAVID HENLEY,                              )
                                          )
                    Petitioner,           )
                                          )        Case No.  1:05-cv-174
                                          )        (1:01cr148)
v.                                        )        *Edgar*
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
                    Respondent.           )

**MEMORANDUM**

Petitioner David Henley has filed a motion to vacate, set aside, or correct a sentence

pursuant to 28 U.S.C. § 2255.  [Court Doc. No. 4].  The Government opposes Henley's motion.

[Court Doc. No. 6].  As stated *infra*, this court has concluded that a hearing is necessary on one

of Henley's claims and that the rest of Henley's Section 2255 motion is without merit and will be

**DENIED**.

I.      **Background**

On August 28, 2001, a United States grand jury sitting for the Eastern District of

Tennessee, Chattanooga Division, returned a four-count indictment against Henley charging him

with one count of conspiracy to distribute in excess of five hundred grams of a mixture and

substance containing methamphetamine in violation of 21 U.S.C. § 846, two counts of

intentionally using a telephone to facilitate a violation of 21 U.S.C. § 846 in violation of 21

U.S.C. § 843(b), and one count relating to his possession with intent to distribute in excess of

fifty grams of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §

841(a)(1) and 841(b)(1)(B).  [Court Doc. No. 12, Indictment].

The government filed a five-count superseding indictment on October 10, 2001. [Court Doc. No. 23]. The superseding indictment added a count of brandishing a handgun during and in relation to the conspiracy to distribute methamphetamine in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. *Id. See also,* Presentence Report ("PSR").

On February 12, 2002 the defendant appeared in this court for a jury trial. On February 15, 2001, the jury found Henley guilty on Counts One, Four and Five of the superseding indictment but acquitted the defendant on the count relating to brandishing a handgun. PSR. The jury also determined that the offense in Count One involved 500 grams or more of methamphetamine and that the offense in Count Five involved 50 grams or more of methamphetamine.

The PSR describes the following offense conduct:

An investigation by the Drug Enforcement Administration (DEA) revealed that the defendant was significantly involved in the distribution of large quantities of methamphetamine. On April 11, 2001, Robert Walker was interviewed by DEA Task Force Officer (TFO) Mitchell Smith. Walker advised TFO Smith that the defendant was receiving 2-3 pounds of methamphetamine weekly or bi-weekly for distribution in the Chattanooga, Tennessee, area. Walker further stated that the defendant would drive to Atlanta to pick up the methamphetamine. Walker indicated that a significant portion of the methamphetamine obtained by the defendant was distributed by Bryan Sanders.

Bryan Sanders has known the defendant for about ten (10) years when they were both students at East Ridge High School in East Ridge, Tennessee. Sanders distributed methamphetamine he obtained from Henley for approximately a one (1) year period in 2000 and 2001. Henley fronted Sanders about eight (8) ounces of methamphetamine a week during this one (1) year period (**52 weeks x 8 ounces/week = 416 ounces of 11.79 kilograms of methamphetamine mixture**). Sanders estimated the defendant was earning about $32,000 per week from the sale of methamphetamine. On one (1) occasion, Sanders accompanied the defendant to a storage building on Bonny Oaks Drive in Chattanooga, and observed the defendant remove two (2) pounds of methamphetamine from behind a mattress.

According to Sanders, the defendant had several individuals in his drug distribution organization who were enforcers. Sanders identified Robert Walker

and David Rhodes as two of these enforcers. Sanders also personally assisted the defendant assault Brett Oakley in the parking lot of a local restaurant for money owed to Henley for methamphetamine. Sanders was aware that Henley had also assaulted Chad "Duck" Brown and Larry Stone. . . .

Robert Walker fronted two (2) ounces of methamphetamine per week to Larry Stone, and Stone then sold the substance for Walker. Stone was aware that the defendant was Walker's source of methamphetamine. Stone had observed the defendant deliver 1/4-pound quantities of methamphetamine to Walker on several occasions **(1/4-pound x 2 = ½ pound or .2 kilograms of methamphetamine mixture)**. Stone had also observed the defendant pick up large sums of cash from Walker on numerous occasions. . . .

In February 2000, Chad "Duck" Brown began purchasing methamphetamine from Larry Owens. Brown was aware that the defendant was Owens' source of methamphetamine. Owens was not providing Brown with the amounts of methamphetamine that Brown requested. As a result, Brown spoke to the defendant, and the defendant offered to handle deliveries of methamphetamine to Brown himself. . . . The defendant provided Brown with a total of 3 ½ ounces of methamphetamine between September 2000 and November 2000 **(3.5 ounces = 0.099 kilograms of methamphetamine mixture)**. . . . Brown owed the defendant about $2,000 for methamphetamine. In early November 2000, after Brown was involved in an automobile accident, Brown was contacted telephonically by Bryan Sanders, and Sanders invited Brown to Dorothy Turner's residence. Brown went to Turner's residence. While Brown was at Turner's residence, the defendant arrived at the residence "raising hell," and pulled a .38 caliber handgun from his front pocket and forced Brown to go outside. As Brown stood up, he observed Robert Walker behind him wearing a ski mask and holding a semiautomatic pistol in his hand. As they moved outside the residence, the defendant and Walker surrounded Brown, and the defendant began screaming and cursing at him about the money that he owed the defendant. The defendant then struck Brown in the face with his fist, and Walker struck Brown in the back of the head with the pistol. According to Brown, the defendant assaulted him again in February 2001 at a hotel in Chattanooga.

Sophan Luy testified that he went to Atlanta once a month for approximately one (1) year and picked up at least one (1) pound of methamphetamine each trip for the defendant. . . .

Richard "Buddy" Nealon had known the defendant for about five years, . . . Nealon purchased about one (1) ounce of methamphetamine from the defendant every other day for about one (1) year (52 weeks x 3 ounces/week = 156 ounces of 4.42 kilograms of methamphetamine mixture; however **AUSA Perry Piper believes a conservative estimate of 2 ounces/week would be more appropriate based on the evidence, which results in a total of 2.9 kilograms of methamphetamine mixture)**. . . .

On July 3, 2001, Christie Croy was arrested after she delivered methamphetamine to a Tennessee Bureau of Investigation [Confidential Informant]. Croy agreed to

cooperate with agents by making contact with the defendant to gain recorded conversations about narcotics or to ultimately facilitate a narcotics transaction with the defendant. . . .

On August 9, 2001, an officer of the Chattanooga Police Department was dispatched to 2119 Gunbarrel Road in Chattanooga in reference to an assault in progress. The officer arrived at the scene and spoke with the victim, Michael Ray Williams. Williams advised the officer that the defendant wanted to meet him near the restroom area at the location. Williams met the defendant, and they went into the restroom. Once inside the restroom, two (2) individuals that were with the defendant held Williams while the defendant headbutted Williams, causing a cut on Williams' forehead. Williams advised the officer that the defendant mentioned something about being in the newspaper and that Williams was a "rat." During his trial testimony, the defendant admitted he headbutted Williams.

On August 10, 2001, Croy placed a telephone call to the defendant and discussed the delivery of a package to the defendant. The package contained $2,400 in official state funds and four (4) ounces of methamphetamine (lab verified 117.4 grams). The defendant had previously been advised that the money and methamphetamine were contraband not seized from Bryan Sanders during the execution of a search warrant at Sanders' residence. The defendant advised that he would pick up the package after work. The defendant later telephoned Croy and advised her that he was en route to her residence. At about 5:30 p.m., the defendant arrived at Croy's residence with a black male passenger inside his car. The defendant entered the residence alone, and took possession of the bag, at which time the defendant was arrested. At the time of his arrest, the defendant had a large knife (blade about 4 inches long) in his back pocket. A small quantity of marijuana was found in the defendant's vehicle. The defendant agreed to cooperate with agents. He waived his rights and stated that Sophan Luy was his source of methamphetamine prior to May 2000, when Luy was arrested. He stated an Asian male named "Scott" had been his supplier of methamphetamine since June or July of 2000. The defendant admitted that he received about six (6) pounds of methamphetamine over a period of one (1) year. The defendant provided agents with consent to search his residence, and the search uncovered about one (1) ounce of marijuana in a kitchen cabinet. . . .

PSR, ¶¶ 6-18. The PSR found Henley was responsible for a total of 14.989 kilograms of methamphetamine mixture based on coconspirator statements and/or trial testimony. *Id.* at ¶ 19. The PSR also recommended an enhancement for obstruction of justice based on Henley's untruthful testimony during the trial and during his suppression hearing. *Id.* at ¶ 21. The report also recommended that Henley be denied a downward adjustment for acceptance of

responsibility because he "declined to provide a statement regarding the instant offense during the presentence interview" and he "testified at trial and denied involvement in the distribution and/or possession with intent to distribute methamphetamine." He further went to trial with a plea of not guilty. *Id.* at ¶ 22. The PSR set the base offense level at 36 due to the fact that the offense involved between 5 kilograms and 15 kilograms of methamphetamine mixture based on United States Sentencing Guideline ("USSG") § 2D1.1(c)(2). The PSR recommended an additional enhancement of 2 levels for Henley's use of a dangerous weapon pursuant to USSG § 2D1.1(b)(1). The report cited the evidence pertaining to Henley's use of a handgun while confronting Chad Brown, as well as the 4-inch blade knife found on his person at the time of his arrest. *Id.* at ¶ 26. The PSR also recommended a four-level enhancement due to the fact that Henley was a leader of the conspiracy. *Id.* at ¶ 28. The adjusted level recommended by the PSR was 44 points. Henley did not have a prior criminal history; therefore, his criminal history category was I. PSR, ¶ 38. The PSR noted that "based on a total offense level of 44 and a criminal history category of I, the guideline range for imprisonment is Life." *Id.* at ¶ 67.

During his sentencing hearing, the court noted that Henley's counsel made a number of objections to the conclusions in the PSR. Judgment Proceedings, Vol. I, July 31, 2002, p. 2. Defense counsel objected to the drug quantities found in the PSR due to the fact that the PSR based its quantities on information provided by non-witnesses at the trial. Defense counsel argued that these statements did not pass the minimum standard of reliability. The government responded to the objection by noting:

> If the Court chooses not to include any drug amounts from statements of individuals that did not testify at trial, Sophan Luy's trial testimony (PSR ¶ 11) reflects that he traveled to Atlanta once a month for about one (1) year and picked up at least one (1) pound of methamphetamine each trip for the defendant. This

amount was not used for guideline calculations to avoid double counting. The testimony of Luy alone attributes 12 pounds (5.44 kilograms) of methamphetamine to the defendant. The trial testimony of Sophan Luy regarding drug amounts places a base offense level of 36 on the defendant, which is currently the defendant's base offense level in the presentence report.

Addendum to PSR.

Defense counsel further objected to the two-point enhancement relating to use of a dangerous weapon based on the lack of reliable proof and due to the fact that Henley possessed a knife upon his arrest. *See id.* The government responded that there were two incidents involving dangerous weapons and that the enhancement could be added based on either of the incidents. Defense counsel also objected to the enhancement pertaining to Henley's alleged leadership role pursuant to USSG § 3B1.1(a). Defendant argued that Henley did not control the alleged co-conspirators and that the enhancement recommendation was based on unreliable co-conspirator allegations. Defense counsel further objected to the enhancement for obstruction of justice. In response to Henley's argument, the government noted that "Application Note #4(b) under § 3C1.1 reflects that committing, suborning, or attempting to suborn perjury are examples of types of conduct to which an adjustment for obstruction of justice applies." *Id.*

During the sentencing this court addressed the various objections raised by Henley's counsel. In response to Henley's objection pertaining to the drug quantity at issue, the court recalled Sophan Luy's trial testimony regarding the amount of methamphetamine he obtained for Henley. It noted:

I'm confident based upon everything that I heard at trial that Mr. Henley here dealt in more than five kilograms of methamphetamine because what Mr. Luy

says here, however you characterize it, is certainly borne out by the other testimony in the case.  Because if we look at the other amounts here involved, you know, that he used, that were used in the presentence report, you got Mr. Sanders, his amounts.  You've got Walker, his amounts.  You've got Nealon, his amounts.  You've got all of these, all of these show that the defendant was distributing a large amount of methamphetamine.

Now you can't count both what Luy says and what these other people say because it could be double counting. . . . And, of course, that's what the presentence report said.  The presentence report originally didn't even use what Luy said.  But I do think that, and I do have confidence in what Luy said, generally, because I do think it's borne out by the other facts in this case. . . . I respectfully, you know, find that the drug quantity is at least five kilograms of methamphetamine based upon all of the testimony in this case.

Judgment Proceedings, Vol. I, pp. 7-8.

With respect to the objection regarding the enhancement for carrying a dangerous weapon, this court determined that the enhancement was justified by the presence of the four-inch blade knife that Henley had upon his person upon arrest.  *See id.*, p. 10.  Henley's counsel objected that Henley used the knife in his work as a cable installer.  In addition, the court heard testimony at the sentencing hearing regarding Henley's use of a gun to threaten Chad Brown.  *Id.* at pp. 14-18.  Following testimony by a Task Force Officer associated with the case, the court determined:

Well, we've got two witnesses saying it.  We got Sanders, we got Walker, who their stories are, the stories do mesh.  What happened according to both of them at Tonya's house, and the gun was pulled on Brown.  And it was a .38.  And I do think that also meshes.  And I know what else meshes is they didn't shoot the gun, but what he did, but was that he used a round.  So I find by a preponderance of the evidence that that did occur, and that the enhancement should be applied.

Of course, as has been pointed out here, 2D1.1(b)(1) of the sentencing guidelines provides that if a dangerous weapon, including a firearm was possessed, offense level total is increased by two levels. . . . So you have testimony that was reiterated here, since I do believe that testimony by a preponderance of the evidence, I conclude that the enhancement should be applied.

I should also say that it's also clear in the alternative that a dangerous weapon does not have to be a firearm.  And the guideline definition of a

dangerous weapon, is an instrument capable of inflicting death or serious bodily injury. And you know, I think it's pretty clear that a knife with a four-inch blade is capable of inflicting death or serious bodily injury. . . . So, in the alternative, that the knife does qualify as a dangerous weapon.

Judgment Proceedings, Vol. I, pp. 18-19.

This court further addressed Henley's counsel's objections to the enhancement for being a manager or supervisor. It determined that a three-level enhancement for Henley's manager/supervisor role was appropriate, rather than the 4-level enhancement suggested by the PSR. *Id.* at p. 26. The court also addressed counsel's objection for the enhancement based on obstruction of justice. The court heard all the trial testimony, as well as a suppression hearing and found that "the defendant did commit perjury on a number of occasions." *Id.* at p. 29.

Although Henley's counsel also moved this court for a downward departure based on his lack of a criminal history and his age, the court declined to give such a departure. Judgment Proceedings, Vol. I, p. 34. In making its decision, this court noted, "I have to consider in deciding whether there should be a downward departure the fact that the defendant has dealt methamphetamine in large quantities for some lengthy period of time without getting caught should not work to his benefit. His age, 25 at the time, I guess when he was caught, is not so young as to prevent him from engaging in serious criminal activity for a long time." *Id.*

Following review of all of counsel's objections, this court sentenced Henley to life imprisonment on Count I, 48 months of imprisonment on Count 4, and 480 months on Count 5 with the terms running concurrently. Judgment Proceedings, Vol. I, p. 35.

Henley appealed his conviction and sentence to the Sixth Circuit. The Sixth Circuit affirmed the district court decisions, noting "Henley has a number of challenges to his trial and sentence, yet little support for his conclusions." *United States v. Henley*, 360 F.3d 509, 511 (6th

Cir. 2004).

## II.      Standard of Review

28 U.S.C. § 2255 states in part:

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or correct the
> sentence.

28 U.S.C. § 2255; *see also, Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).  As the

Sixth Circuit has held, "[i]n order to prevail upon a section 2255 motion, the petitioners 'must

allege one of three bases: (1) an error of constitutional magnitude; (2) a sentence imposed

outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the

entire proceeding invalid.'" *Moss*, 323 F.3d at 454 (quoting *Weinberger v. United States*, 268

F.3d 346, 351 (6th Cir. 2001)).

Petitioner Henley appealed his sentence, and he is now seeking collateral review for what

he claims to have been ineffective assistance of counsel.  The Sixth Circuit has held that "[o]n

collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect

or influence in determining the jury's verdict.'  It is a 'well-settled principle that to obtain

collateral review relief a prisoner must clear a significantly higher hurdle than would exist on

direct appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *Brecht v.

Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Petitioners must "show a 'fundamental defect' in the proceedings which necessarily results in a

complete miscarriage of justice or an egregious error violative of due process."  *Fair*, 157 F.3d at

430 (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

**III.    Issues Raised on Appeal**

As in his appeal to the Sixth Circuit, Henley has raised a number of issues in his 2255 motion.  The court will address each issue separately.

Henley claims he received ineffective assistance of counsel due to the following alleged errors: (1) his attorney failed to challenge the enhancement for possession of a firearm;  (2) his attorney failed to "object to the sentencing Court's failure to instruct the jury as to the legal definition of a 'mixture or substance containing a detectable amount of'" methamphetamine; (3) his attorney failed to advise him that he could be facing a potential sentence of life imprisonment if he was convicted by a jury and his attorney failed to advise him of the availability of a plea of nolo contendere and a cap of 25 years of incarceration; (4) his attorney failed to move to suppress evidence or move for dismissal of the indictment; (5) his attorney failed to object to improper jury instructions and failed to propose appropriate jury instructions; (6) his attorney failed to present available evidence at sentencing and failed to object to false and unreliable evidence; (7) his attorney failed to move for an appropriate downward departure and failed to present the strongest issues on Henley's direct appeal; (8) and his attorney had some unspecified conflict of interest.

Henley further asserts that his sentence violates his Fifth Amendment due process right due to the court's lack of knowledge of its discretion upon sentencing.  Henley finally claims that his sentence violated his Sixth Amendment right to notice and a jury trial.

**III.    Analysis**

**A.    Ineffective Assistance of Counsel Claims**

Criminal defendants are entitled to the assistance of counsel for their defense pursuant to the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI; *see also*, *Moss*, 323 F.3d at 454. A right that is derivative of the right to counsel is the right to have effective assistance of counsel. *Moss*, 323 F.3d at 454; *see also, Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The "benchmark of effectiveness 'must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000) (quoting *Strickland*, 466 U.S. at 686).

In *Hofbauer* the Sixth Circuit explained the two-part test for ineffective assistance of counsel as described in *Strickland*:

> First a defendant must show that counsel's performance was 'deficient,' involving 'errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' . . . . Second, even if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. To make this showing, the defendant must demonstrate that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Hofbauer*, 228 F.3d at 702 (quotations omitted).

Henley alleges that his counsel failed to render effective assistance by failing to object to alleged increases in penalty for sentencing purposes based on facts not proven to the jury beyond a reasonable doubt, relying on *Apprendi v. New Jersey*. 530 U.S. 466, 120 S.Ct. 2348 (2000). In *Apprendi* the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Petitioner further argues that *United States v. Booker*, 543 U.S. 220 (2005) and *Blakely v. Washington*, 542 U.S. 296

(2004) also apply to his claims. In *Blakely* the Supreme Court held that the defendant's sentence violated the defendant's Sixth Amendment right to a jury trial where the court sentenced him to prison for more than three years beyond the maximum sentence for the crime to which he confessed based on a disputed issue of fact. 542 U.S. at 313-314. In *Booker* the Supreme Court reaffirmed its holding in *Apprendi* and invalidated provisions of the Sentencing Reform Act that made the United States Sentencing Guidelines mandatory, instead making the Guidelines advisory. 543 U.S. at 244-245. The Sixth Circuit has since clarified that *Blakely* claims are now *Booker* claims and *Booker* claims do "not apply retroactively to cases already final on direct review." *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005). Thus, *Booker* does not apply to Henley's Section 2255 motion.

However, even if *Booker* and *Blakely* applied to Henley's claims, they would still be without merit because *Booker* does not preclude judicial fact-finding at the sentencing stage. In *United States v. Gates* the Sixth Circuit discussed judicial fact-finding in the post-*Booker* world. The Court noted:

> In *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006), we stated that judicial fact-finding for sentencing purposes must continue as it was conducted prior to *Booker*, under a preponderance of the evidence standard. . . .
> We find that the district court committed no Fifth or Sixth Amendment violation when it used a preponderance of the evidence standard. Prior to *Booker*, the sentencing guidelines called for the use of a preponderance of the evidence standard at sentencing "to meet due process requirements and policy concerns," U.S.S.G. § 6A1.3, and this court held that the requirements of due process were met when courts engaged in fact-finding using a preponderance of the evidence standard. . . . Following *Booker*, we stated in *United States v. Milan*, 398 F.3d 445, 455-56 (6th Cir. 2005): "Indeed, the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1) which required district courts to sentence defendants 'within the applicable Guidelines range' but recognized that the 'remainder of the [Sentencing Reform Act] functions independently.'" In *Milan*, we considered the defendant's Sixth Amendment challenge to his sentence, but the rationale underpinning the holding is equally applicable to [petitioner's] Fifth Amendment

challenge. Therefore, we find that judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury.

461 F.3d 703, 708 (6th Cir. 2006). Thus, under the current law in this Circuit, judicial fact-finding by a preponderance of the evidence at the sentencing stage post-*Booker* does not violate either the Fifth or Sixth Amendments to the United States Constitution.

### 1.      Enhancement for Possession of a Dangerous Weapon

With respect to Henley's first claimed error, he appears to misunderstand the enhancement applied by this court relating to possession of a dangerous weapon. Henley asserts that his attorney failed to present "available evidence to challenge the enhancement for possession of a firearm." Mr. Henley is correct that the jury acquitted him of brandishing a handgun during and in relation to the conspiracy to distribute methamphetamine. *See* PSR, p. 4. However, the enhancement was pursuant to USSG § 2D1.1(b) pertaining to the possession of a dangerous weapon, not brandishing a weapon. The basis for the enhancement was both the .38 caliber handgun he pointed at Chad Brown, as well as the 4-inch blade knife found on his person upon arrest. *See id.* at p. 9.

Moreover, the Sixth Circuit has also clarified the scope of the enhancement:

Section 2D1.1(b) states that a defendant's base offense level for a drug trafficking offense must be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1, cmt. n. 3. The enhancement applies regardless of whether a defendant actually or constructively possessed the weapon. . . . Further, this enhancement "*should* be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n. 3 (emphasis added). . . . Application of this enhancement is no longer limited to occasions when a [weapon] is present during the defendant's offense of conviction; it applies, more broadly, during "relevant conduct."

-13-

*United States v. Ward*, 506 F.3d 468, 474-75 (6th Cir. 2007) (quoting *United States v. Faison*,

339 F.3d 518, 520 (6th Cir. 2003)).  Although Henley claims that his attorney was ineffective for

failing to object to the enhancement for possession of a weapon, the sentencing hearing clearly

indicates that his attorney objected to both the enhancement based on possession of a firearm

*and* the enhancement based on the possession of the knife.  *See* Judgment Proceedings, Vol. I,

pp. 8-11.  This court reviewed the attorney's objection and also heard testimony from a Task

Force Officer associated with the case regarding his knowledge of Henley's use of a .38 caliber

handgun.  The court determined that the enhancement could apply based on evidence relating to

Henley's use of a handgun *or* based on his possession of the knife.  *Id.* at pp. 18-19.  Therefore,

Henley's claim that his attorney failed to object to the enhancement relating to possession of a

weapon is without merit.

### 2.      Objections Based on Drug Quantity

Henley further contends that his counsel rendered ineffective assistance by failing to

object to an alleged increase in penalty for sentencing purposes based on a quantity of drugs not

proven to the jury beyond a reasonable doubt relying on *Apprendi*.  530 U.S. 466.  However,

during the sentencing hearing it became clear that the court based its determination of the

applicable quantity of methamphetamine on the trial testimony provided by Sophan Luy.  *See*

Judgment Proceedings, Vol. I, pp. 7-8.  The court even lowered the drug quantity amount from

that found by the PSR, but the offense level remained the same.  *See Henley*, 360 F.3d at 512.

Thus, the amount of drugs was justified by the evidence produced at trial by a preponderance of

the evidence in accordance with *Gates*, 461 F.3d 703.

### 3.      Objection to Definition of "Mixture"

Henley further asserts that his attorney provided ineffective assistance of counsel by failing to object to the failure to provide a definition of "a mixture or substance containing a detectable amount of methamphetamine" in the jury instructions. The phrase "a mixture or substance containing a detectable amount of methamphetamine" is derived directly from the statutes at issue, 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(viii). The law states that it is "unlawful for any person knowingly or intentionally–(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . ." 21 U.S.C. § 841(a)(1). The law further provides penalties for possession of "50 grams or more of a mixture or substance containing a detectable amount of methamphetamine . . ." 21 U.S.C. § 841(b)(1)(A)(viii). The jury instructions adhered directly to the statute, instructing the jury to find Henley guilty if he possessed or was involved in a conspiracy to distribute a mixture or substance containing methamphetamine. *See* Jury Instructions; *see also*, 21 U.S.C. § 802(11).

The Eleventh Circuit has addressed whether the statutory use of the word "mixture" is constitutionally vague. In *United States v. Smith*, a case involving a mixture of cocaine, the Court noted:

> [Petitioner] challenges his conviction and sentence, arguing that the definition of mixture is too vague and that, because of this vagueness, he may not have possessed more than five grams. This contention is without merit.
> We note from the outset that even if Smith is correct his conviction stands. Specifically, 21 U.S.C.A. § 841(a)(1) makes it an unlawful act for any person knowingly or intentionally to possess with the intent to distribute a controlled substance, but puts no quantity requirement on the amount of controlled substance possessed. *See United States v. Simmons*, 725 F.2d 641, 643 (11th Cir. 1984) ("The statute makes it a crime for a person to possess with intent to distribute a controlled substance . . . . The crime can be proved without any consideration of the amount involved. . . ."). . . . We cannot agree with [petitioner's] argument that the vagueness of a definition of mixture makes the statute constitutionally infirm. The statutory language of the statute is clear, not vague. The purity of the mixture is not the determinative factor. Rather, punishment here requires that (1)

the weight of the mixture . . . itself meets or exceeds five grams, and (2) that cocaine base be a component of the mixture. Absent a clearly expressed legislative intent to the contrary, we take the plain meaning of "mixture" as conclusive. . . . Consequently, the district court properly determined that the penalty provision of Section 841(b)(1)(B)(iii) applied to Smith.

840 F.2d 886, 888-89 (11th Cir. 1988) (abrogated on other grounds by *Gozlon-Peretz v. United States*, 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991)). Because the meaning of the word "mixture" is plain and because this court merely adhered to the statutory language when instructing the jury, Henley's claim that his attorney should have objected to the jury instructions' use of the term "mixture" is without merit. There was no error in the instructions to which Henley's attorney should have objected.

### 4. Advice Pertaining to Proceeding to Trial

Henley's third set of objections against his attorney pertain to his attorney's advice regarding whether to proceed to trial. Henley asserts that:

> Counsel could have but did not advise Mr. Henley that he was facing a potential and likely sentence of life incarceration if he proceeded to trial and lost. Counsel affirmatively misadvised Mr. Henley that he was facing a maximum sentence of 25 years incarceration if he proceeded to trial and lost. Counsel could have but did not advise Mr. Henley of the availability of a plea of nolo contendere to enable him to accept the government plea offer of 25 years total incarceration as a cap for their plea offer.

[Court Doc. No. 4, p. 18]. The government appears to acknowledge that it was willing to offer Henley a plea deal that would have dismissed some of the counts in the indictment. The government's response brief states, "[d]efendant was offered the opportunity to plead to the offense charged in Count One, conspiracy to distribute over 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 841(b)(1)(A), which exposed petitioner to a penalty of ten years to life." [Court Doc. No. 6, p. 6]. The Sixth Circuit, as well as other circuit courts of

appeal, have addressed the duty of counsel to advise a criminal defendant of the range of possible sentences.  For instance, in *Lyons v. Jackson*, the Sixth Circuit noted:

> The duty of defense counsel to consult is paramount when a client has to decide whether or not to waive a constitutional right, such as the right to trial.  Because the decision whether or not to plead guilty ultimately rests with the client, . . . counsel must ensure that the client's decision is as informed as possible.  Failing even to consider, let alone notify the client of, a factor that could negate the entire benefit of the guilty plea is not within the range of professional norms.

299 F.3d 588, 598 (6th Cir. 2002).  In *McAdoo v. Elo*, the Sixth Circuit noted that where a defense counsel gave the defendant "incorrect information regarding the terms of the plea agreement," such that the lawyer told the defendant that "he would serve at most twenty years in prison," if such a claim were true, the defendant's "argument that his counsel's performance was deficient may have merit."  365 F.3d 487, 499 (6th Cir. 2004).

Other circuit courts have also addressed a counsel's duty to inform a criminal defendant of the range of possible sentences.  For instance, the Fifth Circuit has noted that "[i]n determining whether or not to plead guilty, the defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice."  *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995).  The court also noted that "[s]everal other circuit courts have found that the failure of trial counsel to inform the defendant about a government plea offer amounts to ineffective assistance of counsel."  *Id.* (citing *United States v. Blaylock*, 20 F.3d 1458 (9th Cir. 1994); *United States v. Rodriguez*, 929 F.2d 747 (1st Cir. 1991); *Johnson v. Duckworth*, 793 F.2d 898 (7th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416 (1986)) (other citations omitted).  In other words, "'[f]ailing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*.  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an

intelligent choice of whether to accept a plea or take his chances in court." *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Further, it is well-established that "any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696 (2000). Relying on *Glover*, the Sixth Circuit has noted that "[w]here ineffective assistance at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x. 520, 525 (6th Cir. 2007); *see also*, *Grammas*, 376 F.3d at 436; *Phillips v. United States*, 238 F. App'x 89, 100-101 (6th Cir. 2007).

In this action Henley alleges that his counsel failed to inform him that, if he proceeded to trial, he might face life imprisonment. Henley further contends that his counsel informed him that his maximum possible sentence was 25 years imprisonment. Henley's claim that the government offered him a deal of 25 years imprisonment in exchange for a plea of nolo contendere is without merit because the government does not control the sentence the court imposes. However, Henley's other claims regarding his counsel's errors are more concerning. The record contains no information or affidavit pertaining to defense counsel's version of the events. Therefore, this court is without sufficient evidence to rule on whether defense counsel was ineffective in failing to advise Henley of his maximum possible sentence and misadvising him regarding that sentence. The law is clear that if Henley's sentence was increased due to counsel's error, such an error constitutes prejudice for purposes of *Strickland* analysis. This court will refer this issue to a magistrate for a hearing and report and recommendation regarding whether Henley's counsel misadvised him regarding his maximum possible sentence.

### 5.     Alleged Failure to Move to Suppress or Dismiss the Indictment

Henley next claims that his counsel erred by failing to move to suppress evidence and failing to move to dismiss the indictment.  Henley does not describe what evidence his attorney should have moved to suppress.  Further, it is clear that Henley's attorney did move to suppress evidence.  [Court Doc. No. 20].  The motion to suppress sought suppression of the statement Henley gave to officers following his arrest.  In addition, Henley's attorney also moved to dismiss the indictment for failure to provide double jeopardy protection.  [Court Doc. No. 18]. This court held a hearing on the motion to suppress, and it heard arguments regarding the motion to dismiss.  [Court Doc. Nos. 36, 37].  The court denied both motions.  [Court Doc. Nos. 37, 38]. Henley does not describe additional evidence his counsel should have sought to suppress, nor does he provide any additional facts pertaining to grounds for dismissal of the indictment. Pleadings without factual averments do "not call for an evidentiary hearing." *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).  As this court recently noted,

> When a defendant files a § 2255 motion, [he] must set forth facts which entitle
> [him] to relief.  "Conclusions, not substantiated by allegations of fact with some
> probability of verity, are not sufficient to warrant a hearing."  A motion that
> merely states general conclusions of law without substantiating allegations with
> facts is without legal merit.

*Brown v. United States*, 2008 WL 2901764, No. 2:06cv51 *2 (E.D. Tenn. Jul. 22, 2008) (quoting *Green*, 454 F.2d at 53) (citing *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961)). Because Henley's attorney did not fail to move to suppress evidence or fail to move to dismiss the indictment and because Henley provides no further facts in support of his claims, Henley's claims regarding these issues are without merit.

### 6.     Allegations Pertaining to Jury Instructions

Henley's next argument is that his counsel failed to object to inappropriate jury instructions and that he failed to propose appropriate jury instructions. It is clear from a review of the record that Henley's attorney did propose jury instructions for the court to consider. *See* [Court Doc. Nos. 32, 33]. Henley provides no further information regarding the jury instructions to which he believes his counsel should have objected or which ones he should have offered. A review of the final jury instructions reveals that they consist mainly of pattern jury instructions from the Sixth Circuit, as well as instructions taken directly from the criminal statutes at issue. Because Henley fails to provide any factual information relating to specific allegedly improper jury instructions, this claim must fail. *See Green*, 454 F.2d at 53. Thus, these issues are also without merit.

**7.      Presentation of Evidence and Objection to Evidence at Sentencing**

Henley next argues that his attorney failed to present available evidence at sentencing and failed to object to false and unreliable evidence. However, again, Henley provides no specific details pertaining to these allegations. In addition, a review of the judgment proceedings reveals that Henley's attorney did object to alleged unreliable evidence at sentencing, especially reliance on evidence by individuals who did not testify at trial. *See e.g.,* Judgment Proceedings, Vol. I, pp. 2-3. Henley's counsel disputed the level of drug quantity proposed at sentencing. *Id.* at p. 3. The record further demonstrates that Henley's counsel made numerous objections to the sentencing enhancements proposed in the PSR. Thus, the court finds that Henley's contention that his counsel failed to present unspecified available evidence at sentencing and that he failed to object to unreliable evidence to be without merit.

**8.      Alleged Failure to Move for Downward Departure**

Henley's additional objection relating to his counsel's conduct is that his counsel failed to move for downward departure. However, this contention is baseless. The record demonstrates that defense counsel moved for a downward departure due to Henley's age and his lack of a criminal history. Judgment Proceedings, Vol. I, pp. 32-33. Henley does not specify on what other grounds his counsel should have moved for a downward departure. In the absence of specific grounds for departure, Henley's claim relating to a failure to move for a downward departure is without merit.

### 9.    Failure to Preserve Issues for Appeal

Henley further claims that his counsel failed to preserve the strongest issues for appeal, but he does not delineate what those issues are. It is clear that Henley filed a direct appeal and that the Sixth Circuit affirmed both his sentence and his conviction. *See United States v. Henley*, 360 F.3d 509 (6th Cir. 2004). The Sixth Circuit noted that Henley "has a number of challenges to his trial and sentence, yet little support for his conclusions." *Id.* at 511. On appeal, Henley challenged the sufficiency of the evidence to establish the existence of a conspiracy to distribute methamphetamine. *Id.* at 511-514. He also challenged this court's determination of the quantity of methamphetamine for which he was responsible. *Id.* at 514-515. He further objected to the district court's reliance upon Sophan Luy's testimony, as well as the sentencing enhancement for being a leader or organizer. *Id.* at 516-517. Henley also objected to several of the district court's evidentiary rulings on appeal. *Id.* at 518. Henley's trial counsel managed to preserve all of these issues for appeal. Henley does not specify what other issues were supposedly "stronger" than the ones raised on his appeal that his counsel failed to preserve. Without actual factual allegations relating to his particular trial and appeal, Henley's claims are without legal merit.

*See Brown*, 2008 WL 2901764 at *4. In addition, relying on *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the United States Supreme Court has noted, "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*." *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983). Henley's counsel had no duty to preserve every possible frivolous issue for appeal. In the absence of a specific allegation regarding what legal issue his counsel failed to preserve, the court must dismiss this claim.

### 10. Alleged Conflict of Interest

Henley's claim that his counsel had an alleged "conflict of interest" is also without merit. Henley sets forth no specific facts relating to the alleged conflict of interest, nor does he even suggest what kind of conflict of interest his attorney had. Without any factual basis for his allegations, Henley's claim is insufficient to raise an issue for this court's review. Henley's 100-page § 2255 pleading is reminiscent of the one in *Brown* where the petitioner filed "numerous documents related to her § 2255 motion," but whose "pleadings [we]re confusing, difficult to understand, and, in many cases, simply a series of citations to, and quotes from, various court decisions with no effort to relate them specifically to her case." 2008 WL 2901764 at *3.

### B. Alleged Fifth and Sixth Amendment Violations

Henley makes two additional claims that do not allege ineffective assistance of counsel. Henley asserts that his sentence violated the Fifth Amendment right of due process because this court lacked knowledge of the available range of sentencing discretion under applicable law. He

further asserts that his sentence violated his Sixth Amendment right to "notice" and a "jury trial."
These claims appear to be based on *Booker* and the court's discretion at the sentencing phase.
As noted *supra*, *Booker* claims do "not apply retroactively to cases already final on direct
review." *Humphress v. United States*, 398 F.3d at 857. Henley's appeal was already final when
the Supreme Court issued the *Booker* decision. Thus, these arguments have no merit. In
addition, as explained *supra*, judicial fact-finding based on a preponderance of the evidence
post-*Booker* does not violate the Fifth or Sixth Amendment. *See Gates*, 461 F.3d 703.

## IV.     Conclusion

Henley's claims are all without merit, except for his claim alleging that his attorney
affirmatively misadvised him as to his possible maximum sentence and failed to inform him that
he faced the possibility of life in prison if he went to trial and lost. However, the court cannot
find that these issues have merit based on the record presented because it has no information
regarding Henley's attorney's version of the events in question. Therefore, the court will refer
this issue to a magistrate judge for a hearing and a report and recommendation pursuant to 28
U.S.C. § 636(b)(1)(B). Henley's other claims will be **DISMISSED** with prejudice.

A separate order will enter.


　　　　　*/s/ R. Allan Edgar*　　　　　
　　　　　R. ALLAN EDGAR
　　　UNITED STATES DISTRICT JUDGE